**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Criminal Case No. 22-cr-00183-DDD**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**1. DAKOTA RYAN HALLEY,**

**Defendant.**

---

# PLEA AGREEMENT

---

The United States of America, by and through United States Attorney for the District of Colorado Cole Finegan, through Assistant United States Attorney Daniel R. McIntyre and defendant Dakota Ryan Halley, personally and by counsel, Laura Suelau, hereby submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1. This agreement binds only the Criminal Division of the United States Attorney's Office for the District of Colorado and the defendant.

## I. AGREEMENT

### *A. Defendant's Plea of Guilty and Obligations:*

The defendant agrees to;

(1) Plead guilty to Count Three of the Superseding Indictment, charging a violation of 26 U.S.C. §§ 5861(d) and 5871, possession of unregistered firearms, to wit: destructive devices.





(2) The defendant also admits to the forfeiture allegation in the Superseding Indictment.

(3) The defendant further agrees to waive his appellate rights as set forth in detail below.

***B. Government's Obligations:***

This agreement is made pursuant to Fed.R.Crim.P. 11(c)(1)(A) and (B).

The government agrees to recommend the Court give the defendant full credit for acceptance of responsibility per USSG § 3E1.1, unless the defendant engages in conduct that qualifies for the obstruction of justice enhancement under §§ 3C1.1 and 3E1.1, comment (note 4) between the time of his guilty plea and sentencing. The government also agrees to recommend a sentence at the bottom of the advisory sentencing guideline range as finally calculated by the Court. Finally the government agrees to dismiss the Indictment and counts 1,2,4&5 of the Superseding Indictment

DH
JA DW

***C. Defendant's Waiver of Appeal:***

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence (including the restitution order), unless it meets one of the following criteria:

(1) the sentence exceeds the maximum sentence provided in the statute of conviction;

(2) the sentence exceeds the top end of the advisory guideline range from the Sentencing Guidelines that applies for the defendant's criminal history (as determined by the district court) at a total offense level of 27; or

(3) the government appeals the sentence imposed.

If the first criteria applies, the defendant may appeal only the issue of how his sentence exceeds the statutory maximum sentence. But if one of the latter two criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including the restitution order) in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds:

(1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;

(2) the defendant was deprived of the effective assistance of counsel; or

(3) the defendant was prejudiced by prosecutorial misconduct.

The Defendant also waives the right to appeal any sentence imposed below or within the Guideline range upon a revocation of supervised release in this case number, except where the defendant unsuccessfully objects to the grade of violation applied by the court during the district court revocation proceedings. In that event, this waiver does not apply and the defendant may appeal the sentence imposed upon a revocation of supervised release, even if that sentence falls below or within the guideline range calculated by the court.

The Defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c)(1)(A) where such denial rests in any part upon the court's determination that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a). This waiver does not apply to an appeal of a denied § 3582(c)(1)(A)(i)

(compassionate release) motion where the district court, in denying the motion on § 3553(a) grounds, failed to consider the facts allegedly establishing extraordinary and compelling circumstances as part of its § 3553(a) analysis.

***D. Forfeiture of Assets:***

The defendant stipulates and admits defendant admits the forfeiture allegation in the superseding indictment. The defendant further agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to Title 18, United States Code, section 924(d) whether in the possession or control of the United States, the defendant, the defendant's nominees, or elsewhere.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action. The defendant understands that pursuant to 18 U.S.C. § 983, the seizing agency is required to send notice in non-judicial civil forfeiture matters. Having been advised of said rights regarding notice, the defendant hereby knowingly and voluntarily waives his/her rights to notice being sent within the time frames in 18 U.S.C. § 983 and to having the property returned to him/her if notice is not sent within the prescribed time frames. The defendant further agrees to the forfeiture of any substitute assets up to the value of any property described above pursuant to 21 U.S.C. § 853(p) and Federal Rules of Criminal Procedure 32.2(e).

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

## II. ELEMENTS OF THE OFFENSE

The parties agree that the elements of the offense to which the defendant is entering a plea of guilty are as follows:

**Count 3**

*First*: The defendant knowingly possessed a firearm;

*Second*: the defendant knew the specific characteristics or features of the firearm, i.e. that it was a destructive device, that caused it to be registerable under the National Firearms Registration and Transfer Record;

*Third:* The firearm was in operating condition; and

*Fourth:* the firearm was not registered to the defendant in the National Firearms Registration and Transfer Record.

## III. STATUTORY MAXIMUM SENTENCE

The maximum statutory sentence for a violation of 18 U.S.C. §§ 5861(d) and 5871 is not more than 10 years imprisonment; not more than a $10,000 fine, or both; no more than 3 years supervised release; and a $100 special assessment fee.

If a term of probation or supervised release is imposed, any violation of the terms and/or conditions of supervision may result in an additional term of imprisonment.

## IV. COLLATERAL CONSEQUENCES

This felony conviction may cause the loss of civil rights including, but not limited to, the rights to possess firearms, vote, hold elected office, and sit on a jury. The conviction may also result in a violation of the conditions of the defendant's state parole or probation. If the defendant is an alien, the conviction may cause the defendant to be

deported and removed from the United States or confined indefinitely if there is no country to which the defendant may be deported, to be denied admission to the United States in the future, and to be denied citizenship.

## V. STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties stipulate and agree as follows:

In early May 2022, special agents with the Bureau of Alcohol, Tobacco and Firearms (ATF) obtained information that the defendant Halley and Dalton Turner, Halley's roommate, were in possession of two hand grenades (destructive devices). Based on this information, the ATF opened an investigation into the defendant. The investigation led to an undercover ATF special agent (UC) arranging to purchase one of the destructive devices from the defendant. The defendant agreed to sell the UC one of

the destructive devices. The sale occurred on May 12, 2022, and is described in the next paragraph. Based on information discovered during the investigation, agents learned that, prior to May 2022, Turner had been convicted of a crime punishable by imprisonment for a term exceeding one year but, based on available information, the defendant had not been convicted of such a crime.

On May 12, 2022, the UC purchased one destructive device from the defendant. He also purchased a shotgun from the defendant. The total price for the destructive device and the shotgun was $1,900. After this sale, the UC maintained contact with the defendant, and the defendant agreed to sell additional destructive devices (grenades) to the UC. A second sale occurred on May 21, 2022 and is described in the next paragraph.

On May 21, 2022, ATF special agents conducted surveillance of the defendant and Turner. Shortly before the defendant was to meet the UC for the second time to sell additional destructive devices, special agents observed the defendant and Turner loading two vehicles with military style tactical gear, including bulletproof vests and firearms, depicted below:





2/23/23

Turner, the defendant, and a female each drove a vehicle to the location of the second sale. The defendant conducted the sale alone, but Turner and the female staged their vehicles strategically to serve as lookouts and maintained radio communication with the defendant. The sale was conducted in a garage, and the defendant attended the sale wearing military style tactical gear, including body armor, a firearm on his hip, additional magazines, and what appeared to be some type of grenade device. The body armor was later recovered during a search of the defendant's apartment, and it appeared to be in the same condition as during the sale, see below:



At this second sale, the defendant sold six destructive devices (grenades) to the UC for $5,500.

The defendant was arrested on June 8, 2022. At the time of his arrest, he was operating his pickup truck and he was carrying a Smith and Wesson, model M&P 40 M 2.0, pistol, .40 caliber, with serial number NCD1900.

A federal search warrant was executed on the defendant's apartment and the following items were recovered:

1) 32 destructive devices;

2) The Komando model Dickenson XX2T, 12-gauge pump action shotgun, with serial number 193510265;

3) Franklin Armory, model FAI-15, rifle, multiple caliber, bearing serial number C-00477;

4) Century Arms International, model VSKA, rifle, 7.62 caliber, bearing serial number SV7012932;

5) Bushmaster Firearms, model BR-308, rifle, 308 caliber, bearing serial number BRD010488;

6) Riley Defense, Inc., model RAK 47, rifle, 7.62 caliber, bearing serial number B07767;

7) Mossberg, model 183T, shotgun, 410 gauge, bearing serial number 779665;

8) Winchester, unknown model, shotgun, 20 gauge, bearing serial number L1778189;

9) Iberia Firearms, model JCP, pistol, .40 caliber, bearing serial number X756255;

10) HS Produkt, model XDM, pistol, 10 mm, bearing serial number AT197897;

11) Taurus. Model Judge Tracker, revolver, .45 caliber / 410 gauge, bearing serial number LM383511;

12) Over 4,000 rounds of ammunition

The firearms and body armor are depicted below:



2/23/23



These are the destructive devices recovered from the apartment[1]:



After his arrest, the defendant was advised of his *Miranda* rights and agreed to waive those rights and speak with ATF special agents without the presence of an attorney.

---

[1] Mr. Halley does not admit that all items in the photograph are, in fact destructive devices. He also does not admit to knowingly possessing all of the destructive devices recovered from the apartment.

During that interview Halley admitted to possessing grenades recently. Halley also described the firearms he owned, including a "ten and a half inch barrel AR-15."

A federal search warrant was executed on the defendant's pickup truck and a rifle was recovered which had a barrel length less than 16 inches, thus, it is a short-barreled rifle as defined in 26 U.S.C. § 5845(a)(4). The rifle was fully loaded and contained a round in the chamber. This short-barreled rifle was consistent with the short-barreled rifle the defendant described and admitted possession of during his interview with law enforcement.

Explosives experts with ATF examined the devices recovered during the course of the investigation and determined that 39 of the recovered devices were in operating condition and met the statutory definition of "destructive device" located at 26 U.S.C. 5845(a)(8) and (f). The rifle recovered was also determined to have a barrel length of less than 16 inches and thus, is a short-barreled rifle as defined in 26 U.S.C. § 5845(a)(4) and (c). The defendant was aware that the destructive devices (grenades) he possessed and transferred were in fact destructive devices, and that the short-barreled rifle was in fact a rifle with a barrel less than 16 inches in length.

The defendant had not registered the destructive devices or the short-barreled rifle in the National Firearms Registration and Transfer Record (NFRTR) as required in 26 U.S.C. § 5861(d). The defendant did not have any items registered in the NFRTR.

## VI. ADVISORY GUIDELINE COMPUTATION AND 18 U.S.C. § 3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing

range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

A. The base offense level is guideline is of **18**. §2K2.1(a)(5).

B. The following specific offense characteristics apply:

1. Add **6-levels** because the offense involved 25-99 firearms. § 2K2.1(b)(1)(C). The defendant objects to this enhancement. Instead, he believes **2-levels** should be added for the offense involving 3-7 unlawful firearms. § 2K2.1(b)(1)(A).

2. Add **2-levels** because the offense involved a destructive device.§ 2K2.1(b)(3)(B);

3. Add **4-levels** because the defendant engaged in the trafficking of firearms. § 2K2.1(b)(5).[2]

C. There are no victim-related, role-in-offense, obstruction and/or multiple count adjustments.

D. According to the government's calculation, the adjusted offense level should be **30.** The defendant's adjusted offense level would be **22.**

E. Acceptance of Responsibility: Assuming no conduct constituting obstruction, the defendant should receive a three-level adjustment for acceptance of responsibility under § 3E1.1. The government's resulting offense level therefore would be **27**. The defendant's resulting offense level would be **19**.

---

[2] The defendant disagrees that this enhancement applies.

F. Criminal History Category: The parties understand that the defendant's criminal history computation is tentative. The criminal history category is determined by the Court based on the defendant's prior convictions. Based on information currently available to the parties, it is estimated that the defendant's criminal history category would be I.

G. Assuming the criminal history facts known to the parties are correct, the career offender/criminal livelihood/armed career criminal adjustments would not apply.

H. Imprisonment: Based on the government's calculation, the advisory guideline range of imprisonment resulting from an offense level of 27 and the above criminal history category is 70 to 87 months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level estimated above could conceivably result in a range from 70 months (bottom of Category I) to 120 months (statutory maximum sentence for the count of conviction). The defendant's guideline range would be 30 to 37 months.

In any event, the guideline range would not exceed the cumulative statutory maximum applicable to the count of conviction.

I. Fine: Pursuant to guideline § 5E1.2, assuming the estimated offense level of 27, the fine range for this offense would be $25,000 to $250,000, plus applicable interest and penalties. With an offense level of 21, the fine range would be $15,000 to $150,000.

J. Supervised Release: The guideline range of supervised release under § 5D1.2 is between one and three years.

The parties understand that although the Court will consider the parties' guideline estimate, the Court must make its own determination of the applicable guideline range. In doing so, the Court is not bound by the position of any party.

No estimate by the parties regarding the guideline range precludes either from party from asking the Court, within the overall context of the guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the parties regarding the guideline range precludes either party from asking the Court to vary entirely from the advisory guidelines and to impose a non-guideline sentence based on other 18 U.S.C. § 3553 factors.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VII. <u>ENTIRE AGREEMENT</u>

This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant

has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date: 3/7/23

Dakota Ryan Halley
Defendant

Date: 3/7/23

Laura Suelau
Attorney for Defendant

Date: 3/7/23

Daniel R. McIntyre
Assistant U.S. Attorney